IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

HENRY GORHAM, JR.,         )
      Plaintiff,          )      Civil Action No. 7:15cv00437
                      )
v.                    )
                      )      By: Elizabeth K. Dillon
EARL BARKSDALE, *et al.,*     )      United States District Judge
      Defendants.        )

## MEMORANDUM OPINION

      Henry Gorham, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to

42 U.S.C. § 1983, alleging that the defendants denied him access to the grievance procedure and

failed to investigate his claims, used excessive force against him, and subjected him to cruel and

unusual living conditions. Defendants filed a motion for summary judgment and Gorham

responded, making this matter ripe for disposition. Having reviewed the record, the court

concludes that defendants' motion for summary judgment must be granted in part and denied in

part.

## I.

      Gorham alleges that on April 1, 2015, while he was making a cup of coffee at the sink in

his cell, defendant Officer O'Quinn, without provocation or justification, reached through the

cell door box of Gorham's cell and sprayed Oleoresin Capsicum ("OC") spray[1] in Gorham's

"eyes, mouth, face, and up and down [his] body," causing Gorham to choke, gag, and throw up,

and making him temporarily "blind." Gorham alleges that O'Quinn then "immediately

slam[med] and lock[ed]" the cell door box and called for his supervisor, defendant Lieutenant

Gilbert. O'Quinn told Lt. Gilbert that Gorham had been standing on his cell table with his lunch

---

[1] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

tray in his hand, attempting to break the sprinkler in his cell.  Gorham states that he was taken to another cell which was already contaminated with OC spray from a previous occupant.  Gorham alleges that Lt. Gilbert questioned Gorham about the incident and Gorham told Lt. Gilbert to go review the rapid eye security camera recording, that he was in pain and having a hard time breathing, that the cell he was placed in after the incident was already contaminated and had no running water, and that Gorham had not been decontaminated since the incident.  Gorham states that Lt. Gilbert knowingly failed to have Gorham decontaminated "for hours," while Gorham suffered difficulty breathing and pain, including feeling as though his face was on fire for hours. Gorham alleges that Lt. Gilbert did not review the rapid eye security camera recording and did not investigate Gorham's allegations, and instead wrote a "false" disciplinary report in order to "cover up for his officer."[2]  Gorham alleges that defendants Operating Manager Shortridge and Warden Barksdale upheld the disciplinary charge without conducting an investigation.  Gorham further alleges that defendant Grievance Coordinator Messer "continuously" denied Gorham the opportunity to exhaust the grievance process by not processing grievances, not responding to grievances, or providing "short, unexplained response[s]."

In their motion for summary judgment, defendants allege that on April 1, 2015, at approximately 12:05 pm, O'Quinn was picking up lunch trays in the pod where Gorham was housed.  O'Quinn states that, when he arrived at Gorham's cell, Gorham was cursing, standing on top of the table in his cell with his lunch tray in his hand, and threatening to break the sprinkler head.  O'Quinn claims that he instructed Gorham to get down and step away from the sprinkler head, but Gorham swung the lunch tray in an effort to break the sprinkler head. O'Quinn alleges that he again instructed Gorham to get down and step away from the sprinkler head, but Gorham refused.  O'Quinn then administered a one-half to one second burst of OC

---

[2] Gorham was charged with attempting to commit/steal/intentionally destroy/alter/damage state property. After a disciplinary hearing on the charge, Gorham was found guilty and sanctioned with a $12.00 fine.

2

Case 7:15-cv-00437-EKD-RSB   Document 36   Filed 09/23/16   Page 2 of 10   Pageid#: 224

spray, striking Gorham "on the facial area." O'Quinn states that he used the OC spray as a "last resort" after Gorham refused to comply with O'Quinn's instructions.

Lt. Gilbert alleges that after the incident, he received a radio call that a supervisor was needed in the pod where Gorham was housed. Lt. Gilbert states that when he arrived, Gorham was cursing at O'Quinn and O'Quinn told Lt. Gilbert that he had used OC spray in Gorham's cell because Gorham was cursing, standing on top of the table in his cell, and threatening to break the sprinkler head. Lt. Gilbert told O'Quinn that he could leave the pod and asked another officer to retrieve a video camera. With the video camera recording, Lt. Gilbert told Gorham to present himself to be restrained, and Gorham complied without incident. Lt. Gilbert alleges that Gorham refused a shower for decontamination. Lt. Gilbert states that Gorham complained about difficulty breathing. A nurse assessed Gorham by checking his blood pressure and breathing and determined that both were normal. Gorham was moved to another cell without incident. Lt. Gilbert states that Gorham was not placed in a cell "that had no running water or that had previously been used that morning for a cell extraction . . . ."

Defendants argue that Gorham's claims are barred from review because he failed to exhaust his administrative remedies before filing this action, Gorham's claims have no merit, and that defendants are entitled to qualified immunity as to Gorham's claims for damages.[3]

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The "qualified immunity analysis involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015). A "court 'may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case.'" *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (omission in original) (quoting *Raub*, 785 F.3d at 881). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." *See id.* at 18.

movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

III.

Defendants argue that Gorham failed to exhaust his administrative remedies before filing this action. The court finds a material dispute of fact as to whether administrative remedies were available to Gorham and, therefore, will deny summary judgment on this ground.

4

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

Defendants argue that Gorham's claims are barred from review by the court because he did not exhaust administrative remedies before filing this action. Gorham alleges that defendant Messer "continuously" denied Gorham the opportunity to exhaust the grievance process by not processing grievances, not responding to grievances, or providing "short, unexplained response[s]." The court concludes that there is a material dispute of fact as to whether administrative remedies were available to Gorham. Accordingly, the court will deny defendants' motion for summary judgment on this ground.

5

## IV.

Gorham alleges that defendant Messer denied him access to the grievance process and that defendants Shortridge and Barksdale failed to investigate his disciplinary conviction when he appealed. The court finds that Gorham's allegations do not demonstrate a violation of a federal right and, therefore, will grant summary judgment to defendants Messer, Shortridge, and Barksdale.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the constitution of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), and inmates do not have a constitutionally protected right in the grievance procedure, *see, e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Accordingly, the defendants are not liable under § 1983 for their responses to the grievances or appeals.[4] *See Brown v. Va. Dep't Corr.*, No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying

---

[4] To the extent Gorham is alleging that he was denied due process at his disciplinary hearing, his allegations cannot survive summary judgment. First, Gorham does not allege how any of the named defendants denied him due process at the hearing. Moreover, to establish a violation of procedural due process guaranteed by the Fourteenth Amendment, an inmate must demonstrate a deprivation of "life, liberty, or property" by governmental action, which Gorham has not done. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As a result of Gorham's disciplinary conviction he was sanctioned with a $12.00 fine. The court concludes that a $12.00 fine does not constitute an atypical or significant hardship on Gorham in relation to the ordinary incidents of prison life. *See Henderson v. Virginia*, No. 7:07cv266, 2008 U.S. Dist. LEXIS 5230, at *33-34, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (holding that a $12.00 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life). Therefore, Gorham's due process violation claim concerning the disciplinary hearing will be dismissed.

deprivation).  Further, Brown's claims that the defendants failed to investigate his grievances or appeals are not cognizable under § 1983.  *See Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); *Sweat v. Rennick*, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue.").  Accordingly, the court will grant summary judgment as to Gorham's claim against defendants Shortridge, Barksdale, and Messer.[5]

V.

Gorham alleges that defendant O'Quinn used excessive force when he used OC spray on Gorham.  Having reviewed the record, the court finds that genuine disputes of material facts preclude summary judgment and, therefore, denies defendants' motion as to this claim.[6]

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners.  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  To resolve a claim

---

[5] To the extent Gorham is attempting to raise claims against defendants Shortridge and Barksdale for their roles as supervisors, his claims fail because there is no *respondeat superior* liability under § 1983.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997).  Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."  *Vinnedge*, 550 F.2d at 928.  When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible.  *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133 (4th Cir. 1982).  Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Gorham fails to allege facts sufficient to support the required elements for supervisory liability against defendants Shortridge and Barksdale.

[6] To the extent Gorham brings this action against the defendants in their official capacity for monetary damages, his claim is not cognizable in § 1983, and therefore, the court will grant defendants' motion for summary judgment as to Gorham's claims for monetary damages against defendants in their official capacity.

7

that prison staff's excessive force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34 (2010).

Gorham alleges that he was making coffee at his sink and that O'Quinn used OC spray on him without provocation or justification. O'Quinn alleges that Gorham was standing on a table trying to break the sprinkler head in his cell and disobeying O'Quinn's orders to step away before O'Quinn used the OC spray as a "last resort." Based on the record before the court and drawing all reasonable inferences in the light most favorable to Gorham, the court concludes that there are genuine disputes of material facts precluding summary judgment on this claim. These same factual disputes preclude defendants' argument that O'Quinn is entitled to qualified immunity. *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). For these reasons, the court will deny defendants' motion for summary judgment as to Gorham's excessive force claim against defendant O'Quinn.

VI.

Gorham alleges that defendant Lt. Gilbert subjected him to cruel and unusual living conditions when Lt. Gilbert failed to decontaminate Gorham and placed Gorham in a contaminated cell without running water "for hours," while knowing that Gorham was suffering pain and difficulty breathing. Having reviewed the record, the court finds that genuine disputes

8

of material facts preclude summary judgment and, therefore, denies defendants' motion as to this claim.

To establish that living conditions constitute cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of a basic human need was objectively sufficiently serious," and (2) that "subjectively the officials acted with a sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler*, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions, *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

Gorham's allegations of being left for hours in cell that was contaminated with OC spray, without water, and without having been decontaminated himself, while suffering difficulty breathing and pain, including feeling as though his face was on fire, describe conditions that satisfy the objective requirements. Furthermore, Gorham states that he informed Lt. Gilbert about the condition of the cell, that he had not been decontaminated, and that he was in pain. Lt.

9

Gilbert disputes this version of the facts and states that Gorham refused decontamination, was evaluated by a nurse, and was placed in a cell that was not contaminated with water. There is some indication that these events may have been videotaped, but the court was not provided with a recording. Due to genuine disputes of material facts between Gorham's and Lt. Gilbert's versions of events, a trial is necessary to resolve these claims, and the court finds that Lt. Gilbert is not entitled to qualified immunity or summary judgment on this claim. *Buonocore*, 65 F.3d at 359. Accordingly, the court will deny defendants' motion for summary judgment as to Gorham's living conditions claim against defendant Lt. Gilbert.

VII.

For the reasons stated herein, defendants' motion for summary judgment is granted in part and denied in part.[7]

An appropriate order will be entered.

Entered: September 23, 2016.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge

---

[7] Defendants filed a motion for protective order asking the court to stay discovery until the court ruled on their motion for summary judgment because they argued that defendants were entitled to qualified immunity and that Gorham failed to exhaust his administrative remedies. Inasmuch as the court is denying the motion for summary judgment in part, the court will deny defendants' motion for a protective order. In addition, Gorham filed a motion to compel discovery. Upon consideration of the motion, the court will grant the motion and direct defendants O'Quinn and Lt. Gilbert to respond to Gorham's discovery requests (Docket No. 24).