IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HENRY GORHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:15-cv-00437 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| EARL BARKSDALE, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Henry Gorham, Jr., a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that Officer Austin O'Quinn used excessive force against him and Lt. Christopher Gilbert subjected him to cruel and unusual living conditions by placing him in another cell contaminated with OC spray.[1] A bench trial was held on May 2–3, 2017, and at the conclusion of trial and for the reasons stated on the record, the court granted Lt. Gilbert's motion for judgment as a matter of law as to the living conditions claim. *See* Dkt. No. 95. Accordingly, as to that claim, the court will enter judgment in favor of Lt. Gilbert, and only Mr. Gorham's excessive force claim against Officer O'Quinn remains.

During the bench trial, all parties presented evidence and argument. Mr. Gorham called inmates Kelvin Canada, Peter Mukuria, and Deshawn Kelly, as well as Red Onion State Prison (Red Onion) Operations Manager Sherry Shortridge and Correctional Officer Adam Mullins. Mr. Gorham also testified on his own behalf. The defendants called current and former Red Onion employees Brian Owens (a former correctional officer), Nurse Patricia Adams, Officer

---

[1] Mr. Gorham also alleged claims against other defendants regarding access to the grievance procedure and failure to investigate claims. By memorandum opinion and order entered September 23, 2016, the court granted those defendants' motion for summary judgment. *See* Dkt. Nos. 36 and 37.

Mark Mullins, Officer Kevin Eldridge, Grievance Coordinator Jennifer Messer, and defendants Correctional Officer O'Quinn and Lt. Christopher Gilbert.

Based on the evidence presented at trial, the court issues this memorandum opinion, which constitutes its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons stated herein, the court will enter judgment in favor of Mr. Gorham and against Officer O'Quinn and will award Mr. Gorham $2,000 in damages.[2]

## I. DISCUSSION

### A. Standard of Review

Rule 52(a)(1) of the Federal Rules of Civil Procedure requires that the court make specific findings of fact and state conclusions of law separately in any action tried without a jury. Specifically, the trial judge must appraise the testimony and demeanor of witnesses, as well as weigh the evidence and choose among conflicting inferences and conclusions that seem most reasonable. *See Burgess v Farrell Lines, Inc.*, 335 F.2d 885, 889–90 (4th Cir. 1964). In this regard, the trial court has a unique opportunity to evaluate the credibility of witnesses and weigh the evidence accordingly. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 345 (3d Cir. 2013) (citing *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 (1982)). The trial judge has the inherent right to disregard testimony of any witness when satisfied that the witness is not telling the truth or the testimony is inherently improbable due to inaccuracy, uncertainty, interest, or bias. *Id.* (citation and internal quotation marks omitted); *see Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) (internal quotation omitted) (stating that the factfinder is in a better position to make judgments about the reliability of some forms of evidence, including evaluation of the credibility of witnesses).

---

[2] Gorham filed a motion asking the court to enter judgment in this case. *See* Dkt. No. 102. Inasmuch as the court now enters judgment, the court will also grant Gorham's motion requesting the same.

A trial court must do more than announce statements of ultimate fact, *United States ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986), but is not required "to make findings on all facts presented or to make detailed evidentiary findings . . . . The ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence," *Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962).

**B. Findings of Fact**

This case turns on whether the court believes the testimony of plaintiff Henry Gorham ("Gorham") or the testimony of Officer O'Quinn ("O'Quinn). Gorham testified at trial that, in the week prior to the incident, he had exchanged words or threats with O'Quinn. He said that on April 1, 2015, he had placed his lunch tray in the cell door box to be picked up after the sliding door was opened by another officer. He was standing at the sink in the cell fixing coffee when, without provocation or justification, O'Quinn sprayed him with OC on the right side of his face. O'Quinn testified at trial that he had not exchanged any words with Gorham. When picking up lunch trays, he arrived at Gorham's cell and heard him cursing and saying that he was going to break the sprinkler head. He testified that Gorham was standing on the table next to the cell door and was swinging at the sprinkler head, above the table, with his lunch tray. He repeatedly told him to stop, Gorham did not stop, and he administered a one-half to one second burst of OC spray. He stated that he believed there was a threat to the security and safety of the other offenders due to the flooding potential. He then called for assistance. O'Quinn's accounts about the lunch tray varied.

Many of the facts are undisputed, and other facts require the court to make credibility assessments, especially as to the credibility of Gorham and O'Quinn, as noted above. The court first addresses the factual findings based on undisputed evidence and then will address the credibility assessments and factual findings based on those assessments.

The court makes the following factual findings based on the undisputed evidence presented at trial.

1. Gorham was incarcerated within the Virginia Department of Corrections (VDOC) at Red Onion during the time relevant to this action.

2. O'Quinn was a correctional officer employed by the VDOC at Red Onion during the time relevant to this action.

3. On April 1, 2015, O'Quinn, was picking up lunch trays in the C housing unit and put his wrist in the tray slot in Gorham's cell (C210) and administered a one-half to one second burst of OC spray on Gorham, hitting Gorham on the right side of his face, at approximately 12:05 p.m. (the "Incident").

4. The only people who know what Gorham was doing inside his cell immediately preceding the Incident are Gorham and O'Quinn.

5. After being sprayed with OC, Gorham went to the toilet and vomited. He washed his face and eyes with a wash cloth. The spray caused Gorham to be blind for a minute, and to suffer a burning sensation on his face, coughing, congestion, blurred vision, and itchy private parts when the fumes got into his pants.

6. Lt. Gilbert, who was the supervisor, and other officers, responded following the Incident.

7. Gorham wiped his face with a wash cloth soon after the Incident and, shortly thereafter, was offered water by Lt. Gilbert, which he declined.

8. Gorham was taken to another cell and was assessed by a nurse approximately fifteen minutes after the Incident, and he was decontaminated by shower approximately forty-five minutes after the Incident.

9. At the time of the Incident, Gorham was housed in C210. There is a window on the back wall of the cell and in the cell door. To the immediate left of the door (if you face the cell at the door) is a small table attached to the cell wall. The table is about five feet from the ceiling. Above the table is a sprinkler head and a vent. Sometimes inmates stand on their toilets or their tables, depending on the location of their cell vents, to talk to one another

through the vents. To the left of the table is the bed. There is a sink on the right cell wall and a toilet beyond the sink. You can see the sink clearly from the cell door window.

10. Gorham is six feet, two or three inches tall. He has a no kneel order because of bad knees, but has been seen before standing on things in his cell to talk through the vent.

11. The housing unit has a Rapid Eye Video recording system, and the video (which has no audio) from the Incident was retained. (D. Ex. 2.)[3]

12. The Rapid Eye recording includes flashes of all colors of the rainbow from the sun shining through windows. The stair railings are purple and yellow at times and pulse with color. These pulses of color are also seen at cell door windows, including C210.

13. The C210 cell door window pulses with flashes of at least red, blue, green, and orange colors at times.

14. The Rapid Eye recording shows an officer opening the narrow sliding cell doors that cover the slot under the box on the cell door. The recording also shows O'Quinn following behind that officer, such that they are not at the cells at the same time, and picking up food trays with a cart. Gorham is seen at his door shortly after the officer opens the sliding cell door and before O'Quinn arrives at the cell. O'Quinn is seen at C210 with the cart and standing at the door of C210 for some time. It is impossible to see what he is doing with regard to OC spray or lunch trays without speculating.

15. A hand-held video camera was used to record the response to C210 following the Incident. (D. Ex. 3.) The recording shows Gorham wearing a white t-shirt and then putting on his orange shirt before he was transferred to another cell. Gorham is seen wiping his face with a wash cloth. While the recording shows only a portion of the table, a photograph and papers can be seen on the table. A stack of books can be seen on the floor near the table. Gorham also had a television in his cell. Lt. Gilbert is seen entering the cell and coming back out, but the camera is never taken in to the cell to show the sprinkler head or the whole table. Lt. Gilbert can be heard telling Gorham he was just checking it out. Gorham states, "What's supposed to have been up there?" Lt. Gilbert responds, "Nothing supposed to be up there. I was checking to make sure you hadn't tampered with it." Gorham says, "What been tampered?" Lt. Gilbert responds, "Your sprinkler head." Gorham says, "He told you I tampered with it? Ain't you going to check it? Lt. Gilbert tells him that he has already "been in it." Later, Gorham is heard asking about the "speaker," and Lt. Gilbert explains that he was talking about the sprinkler.

16. The hand-held video recording also shows a meeting between Lt. Gilbert and O'Quinn following Gorham's placement in another cell. Lt. Gilbert conveys his understanding of what O'Quinn told him and notes that his inspection of the sprinkler head found it to be intact. He notes that a cell search would be conducted for whatever items may have been used to try to destroy state property and a property inventory would be completed.

---

[3] Trial exhibits are cited as "P. Ex. __" for plaintiff's exhibits and "D. Ex. __" for defendants' exhibits.

O'Quinn then says, "I went to pick up trays and offender H. Gorham was on top of his table with his tray trying to bust the sprinkler head, so I administered a half to one second burst of OC spray to stop him from doing so." O'Quinn makes no mention of his inspection or possession of the tray, despite being present for Lt. Gilbert's statements.

17. Correctional Officer Adam Mullins searched cell C210 after the Incident. He has no recall of his search, and he prepared no report.

18. No property inventory of Gorham's property was prepared.

19. The sprinkler head in Gorham's cell was not damaged.

20. There was no evidence of a damaged tray.

21. An audio recording was made of Gorham's disciplinary hearing on May 18, 2015, regarding the charge he received as a result of the Incident. (P. Ex. 7.) Gorham is heard questioning O'Quinn, and O'Quinn responds as follows:
    G: And you sprayed me because I was breaking the sprinkler head with a tray?
    O: Yes sir.
    G: Where the tray?
    O: The tray was not in the slot.
    G: Alright, where the tray at?
    O: It was not in the slot, it was in your hand.
    G: Alright. So therefore, according to what you said, I was hitting the tray breaking that sprinkler head and you sprayed me because I was breaking that sprinkler head and you closed that tray slot real quick and locked it and called __ (help?). That tray should be in my cell when they arrived and moved me to shake me down, right?
    O: It was in your cell.

22. Gorham was wearing a white t-shirt when the Incident occurred.

23. Gorham filed an informal complaint concerning the Incident on or about April 3, 2015, and Lt. Gilbert responded on April 8, 2015, finding "no evidence to support" Gorham's allegation.

24. Gorham prepared and attempted to file a timely regular grievance concerning the Incident, but the grievance department does not have a record of its receipt and/or processing.

25. Because of Gorham's housing, he cannot deliver a regular grievance himself. He must rely on night shift officers to deliver the grievance.

26. On April 21, 2015, Gorham wrote a letter to Ombudsman Curtis Parr regarding his inability to receive a receipt for his grievance. (P. Ex. 9).

27. On May 18, 2015, after not receiving a response to his grievance, Gorham wrote to the Warden of Red Onion, complaining that his grievance was not being properly processed. (P. Ex. 10.)

28. On May 28, 2015, Gorham filed an informal complaint, complaining that the grievance department did not properly process his grievance. (D. Ex. 13.)

29. From February to May 2015, the Red Onion Grievance Coordinator, Jennifer Messer, was on short term disability leave and only worked a couple of hours per week.

30. Messer does not know whether Gorham filed a regular grievance concerning O'Quinn's use of OC spray.

31. On more than one occasion, Gorham's grievance papers, regarding matters other than the Incident, were returned to him by inmates who should not have possessed the grievance papers. The only explanation for this, according to Messer, is that someone must have stolen them from Messer's office.

As indicated previously, this case turns on the credibility of Gorham and O'Quinn. In considering the credibility of the parties and witnesses, the court has considered the consistency of the witnesses' testimony with the undisputed or clearly shown evidence and the internal consistency of the witnesses' testimony. The court has also considered whether a party's testimony is consistent with previous statements made by that party, the demeanor of the parties, any motive to be untruthful[4], and common sense.

Gorham has consistently asserted that O'Quinn administered OC spray without cause. O'Quinn has consistently asserted that Gorham was on his table trying to break the sprinkler head with his food tray when he sprayed him. O'Quinn's testimony, however, is not internally consistent, is not consistent with undisputed evidence, is not consistent with previous statements made by him, and defies common sense.

Gorham has consistently made much of the food tray and its whereabouts because he says that he put the tray in the box when he is seen on the Rapid Eye recording at his cell door before

---

[4] The court notes that both parties have a motive to testify falsely—the plaintiff to try to recover money or get O'Quinn in trouble, and O'Quinn to stay out of trouble with his job and not have a verdict against him.

7

O'Quinn ever arrives, making it impossible for him to use the tray to damage the sprinkler head. O'Quinn, however, in his reports and statements does not concern himself with the tray. Others respond to Gorham and tell him that the tray is irrelevant because it does not matter if he was using the tray to damage the sprinkler head or if he was using something else. As Gorham recognized, however, the tray is important with regard to O'Quinn's credibility.

On the hand-held video recording, Lt. Gilbert specifically notes that a search will be done of the cell for whatever items may have been used to destroy state property. O'Quinn, knowing the tray is what he said was used, says nothing about inspecting the tray and putting it on the cart. At trial, O'Quinn testified that, after he sprayed Gorham and after he called for assistance, Gorham "slung his tray in the cell cursing." He then added that he opened the top box and put the tray on the cart. The only way the tray could be there then is if Gorham put it there prior to the Incident. His counsel then tried to rehabilitate him through a leading question implying that O'Quinn had just testified that Gorham put the tray in the box, but that was not the testimony.

Then, at the disciplinary hearing, O'Quinn was asked specifically, "That tray should be in my cell when they arrived and moved me to shake me down, right? O'Quinn answered, "It was in your cell." At trial, he was asked by his counsel what he was intending to convey by his words at the disciplinary hearing. Then he testified that he was trying to convey that the tray was still there when he closed the slot, but that he retrieved the tray after he reopened the slot and Gorham put the tray in it, and then O'Quinn put it on the cart. Of course, that is not what he said in the disciplinary hearing. Thus, O'Quinn's testimony is inconsistent internally and inconsistent with other statements made by him. The court also notes that O'Quinn testified to very little information without being led by counsel. He also recalled very little information when he was

questioned by Gorham. Moreover, the undisputed evidence shows that there was no damage to the sprinkler head or a food tray.

The only person who testified that he saw Gorham attempting or threatening to break the sprinkler head in his cell was O'Quinn. O'Quinn's account of the incident is also less credible than that of Gorham with regard to common sense. It is undisputed that the sprinkler head was to the left of the cell door and that there is a small table directly under the sprinkler head. It is also undisputed that Gorham is approximately six feet two or three inches tall and that the top of the table is approximately five feet from the sprinkler head. Additionally, it is undisputed that the OC spray hit Gorham on the right side of his face. O'Quinn testified that Gorham was standing on top of the table, swinging a food tray in an attempt to break the sprinkler head. O'Quinn does not recall how Gorham was positioned on the table or how, specifically, he was swinging the tray. In order for O'Quinn's testimony to be accurate and consistent with the undisputed facts, Gorham would have had to have been facing the interior portion of his cell with his back to the wall and standing partially crouched, swinging the tray backward at the sprinkler head that he apparently could reach without the use of the tray. Gorham could have been facing the wall or standing sideways, but would have to contort his body to have the right side of his face toward the cell door. Also, if he had a tray in his hand, he could have blocked the OC spray. In addition, the hand-held video recording shows that Gorham's cell was filled with his personal items, including his television, books, papers, and photographs, that would have been ruined if the sprinkler was activated in his cell. Finally, if Gorham had attempted to flood his cell, the damage would have been largely limited to his own cell because there were three drains directly outside Gorham's cell door which would have prevented the water from flooding the pod.[5]

---

[5] It also strains credulity to believe that Gorham would state his intended purpose to damage the sprinkler head and attempt to do it knowing that O'Quinn was right there.

9

However, if Gorham had been standing at his sink, the right side of his face would be in direct line with the OC spray.

The court notes that another officer testified that he heard O'Quinn direct Gorham to stop trying to break the sprinkler head; however, no officer, other than O'Quinn actually saw or heard Gorham attempting or threatening to break the sprinkler head. While Officer Owens wrote in the control room log book that Gorham was attempting to break the sprinkler head, he said he knew this because he heard O'Quinn yell at Gorham not to break it. His log entry, however, is questionable because it also indicates that O'Quinn administered a one half to one second burst of OC. At trial, he first said he could not see the administration of the OC spray and then testified that he could see it. The Rapid Eye recording does not show the administration of the OC spray as O'Quinn and the food cart are in the way. It was also clear that some of Owens' testimony was based upon assumptions about the Incident. Although O'Quinn may very well have directed Gorham to stop trying to break the sprinkler head, that does not necessarily mean that Gorham was in fact engaging in that conduct. O'Quinn's statement is not enough to convince the court that Gorham was actually trying to break the sprinkler head.

Sherry Shortridge, who reviewed the Rapid Eye recording to assist the Warden in preparing a response to Gorham's disciplinary charge appeal, testified that she recommended upholding the discipline because she could see a flash of orange up high and to the left on the cell door window of Gorham's cell. She believed that this was consistent with Gorham standing on his table. After reviewing the video at trial, Ms. Shortridge testified that she could now see the other flashes of color at the C210 cell door window and at other cell door windows, but she still thought the flash of orange was Gorham. The Rapid Eye recording simply does not support her belief as to the significance of a flash of orange, and the hand-held video shows Gorham

10

wearing a white t-shirt. Thus, Ms. Shortridge's testimony does not support O'Quinn's version of events either.

No other inmates or officers testified that they heard Gorham making any kind of disturbance prior to the administration of the OC spray. One inmate recalled harsh or threatening words exchanged by O'Quinn in the week prior to the incident, and another, in the cell next to Gorham, testified that he saw O'Quinn shaking the can of OC on the way to Gorham's cell.

Finally, the court finds the hand-held video of Gorham's questioning of Lt. Gilbert, after Lt. Gilbert enters the cell, to be very convincing. Gorham appears genuinely befuddled by what Lt. Gilbert was looking for in the cell. He first believes that Lt. Gilbert is looking for something that was supposed to have been "up there". When Lt. Gilbert mentions tampering, he does not know what it was that he supposedly tampered with.

For all of these reasons, the court finds Gorham's testimony to be credible and finds O'Quinn's account of the Incident, with the exception of the administration of OC spray, to be fabricated.

Given the above analysis, the court makes the following factual findings based on the disputed evidence presented at trial.

32. Gorham was not attempting or threatening to break the sprinkler head in his cell immediately before O'Quinn used OC spray against him.

33. Gorham was standing at his sink making coffee when O'Quinn used OC spray against him.

34. Gorham posed no threat to O'Quinn or to any person, to state property, or to institutional safety or security at the time O'Quinn used OC spray against him.

35. O'Quinn did not perceive Gorham as a threat to the safety or security of the institution, state property, or to anyone at the time he used OC spray against Gorham.

11

II.  CONCLUSIONS OF LAW

This court has jurisdiction over Gorham's § 1983 claims pursuant to 28 U.S.C. § 1331, which confers jurisdiction on a court to resolve civil actions arising under federal law.  Section 1983 provides a cause of action against "[e]very person who deprives a citizen of his or her constitutional rights under color of state law."  42 U.S.C. § 1983.  To succeed at trial on a § 1983 claim, a plaintiff must establish by a preponderance of the evidence that a state actor violated a federal right.  *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988); *In re Winship*, 397 U.S. 358, 371 (1970).  Preponderance of the evidence means a fact is more probable than not.  *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993).

Gorham alleges that O'Quinn violated the Eighth Amendment.  The Eighth Amendment, applicable to the states through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind.  *Williams v. Benjamin*, 77 F. 3d 756, 761 (4th Cir. 1996).

O'Quinn denies that he used excessive force and raises the affirmative defense that Gorham failed to exhaust administrative remedies before filing this action; thus, judgment should be entered in O'Quinn's favor.  Because a failure to exhaust administrative remedies would bar Gorham's claim, the court addresses exhaustion before turning to the merits of the excessive force claim.

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Services, Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). The court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

The court concludes that Gorham has demonstrated by a preponderance of the evidence that administrative remedies were not available as to his claim that O'Quinn unjustifiably used OC spray against him. Gorham submitted an informal complaint regarding the incident on April 3, 2015, to which Lt. Gilbert responded. (D. Ex. 12.) Gorham prepared and attempted to file a

regular grievance, but the grievance office has no record of receipt of that grievance. During this time, the grievance coordinator, Jennifer Messer who was the only witness who testified about grievances on behalf of defendants, was on short term disability and was only in the office a couple of hours a week. Moreover, there were at least two other occasions when other inmates were inexplicably in possession of certain of Gorham's grievance papers (not involving the Incident). The grievance coordinator could only attribute this to theft from the grievance office. Moreover, Gorham followed up quickly when he received no response from his regular grievance. He wrote to Ombudsman Curtis Parr on April 21, 2015 (P. Ex. 9), and to Warden Barksdale on May 18, 2015 (P. Ex. 10). He filed an emergency grievance against Ms. Messer regarding the same on June 24, 2015. (P. Ex. 8.) O'Quinn's argument that administrative remedies were available to Gorham because he was able to pursue grievances as to other issues during the same time period is unpersuasive because it does not demonstrate that administrative remedies were available as to this particular claim. Accordingly, the court rejects O'Quinn's affirmative defense that Gorham failed to exhaust available administrative remedies and, therefore, will proceed to the merits of Gorham's claim.

**B. Excessive Force**

The determination of whether the use of force by a prison official violates the Eighth Amendment includes both a subjective and objective component. *See Williams*, 77 F.3d at 761 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). To meet the objective component in an excessive force case, an inmate must show that the force used was "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). For example, "[a]n inmate who complains of a [mere] push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37 (internal quotations and citations omitted). The objective

14

component can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams*, 77 F.3d at 762 (internal quotation marks omitted). Thus, the Fourth Circuit has held that an inmate's "adverse physical reaction to the pepper spray—gagging, breathing difficulty, and vomiting—establishes that the nature of the force [prison officials] used against [him] was nontrivial." *Tedder v. Johnson*, 527 F. App'x 269, 274 (4th Cir. 2013) (citing *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) (observing that pepper spray is designed to disable the person sprayed "by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx") (internal quotation marks omitted)), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).

There is no question that Officer O'Quinn's use of OC spray on Gorham's face constitutes more than a nontrivial use of force. The OC spray acted as it was designed to act by causing Gorham to suffer temporary blindness, a burning sensation on his face, vomiting, difficulty breathing and talking, and blurred vision. *See Wilkins*, 559 U.S. at 37–38 (emphasizing that it is the nature of the force "that ultimately counts" and provides the "core judicial inquiry" in an excessive force case).

Having determined that the objective component of Gorham's excessive force claim is satisfied, the court turns to the subjective component, which requires Gorham to prove that O'Quinn acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *See Tedder*, 527 F. App'x at 272 (citing *Whitley*, 475 U.S. at 320–21). It is well established that prison officials violate the Eighth Amendment when they use OC spray against an inmate in "quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008)

15

(citations omitted). In *Whitley*, the Court outlined factors to consider when deciding whether a prison official acted wantonly or maliciously: (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them" at the time; and (4) the "efforts made to temper the severity" of the force applied. 475 U.S. at 321.

Applying the *Whitley* factors, the court concludes that Gorham has satisfied the subjective component of his excessive force claim. First, there is no evidence suggesting that there was a need for the application of force at the time that O'Quinn applied it. The court does not credit O'Quinn's testimony that Gorham was attempting to damage the sprinkler head, which is the only reason proffered by O'Quinn for the necessity of his use of OC spray. Second, because the court determines that no force was necessary at all, the very use of OC spray causes the second factor to weigh in Gorham's favor as well. Third, "nothing about the incident in question suggests that [Gorham] posed a threat." *Tedder*, 527 F. App'x at 273. Like the inmate in *Tedder*, Gorham credibly denied acting as a threat to staff or inmates before getting sprayed. Gorham posed no threat to the safety or security of the institution, state property, or to anyone at the time the force was used, and the court does not credit O'Quinn's statement that he perceived a threat to other inmates. Fourth, O'Quinn in no way tempered the severity of the force applied. Although O'Quinn administered only a one-half to one-second burst of OC spray, "given that no [spray] was required at all to force compliance from an inmate who was already complying . . . this factor is of no significant value" to O'Quinn. *Id.* Accordingly, the court determines that O'Quinn acted "maliciously and sadistically" in administering the OC spray. Thus, based on the greater weight of the evidence, the court concludes that O'Quinn used excessive force against

16

Gorham and violated Gorham's Eighth Amendment right to be free from cruel and unusual punishment.

## IV. DAMAGES

### A. Compensatory Damages

In calculating compensatory damages, district courts "may make a 'just and reasonable' estimate of the damages due, but those estimates must nevertheless be consistent with the evidence presented regarding damages." *Horina v. City of Granite City*, 538 F.3d 624, 637 (7th Cir. 2008). Having considered the facts of this case and having reviewed other similar cases, the court will award Gorham $500 in compensatory damages against O'Quinn for the pain and suffering caused by the unjustified use of OC spray. *See, e.g.*, *Ramirez v. Ferguson*, No. 08-cv-5038, 2011 U.S. Dist. LEXIS 34625, at *45, 2011 WL 1157997, at *17 (W.D. Ark. Mar. 29, 2011) (awarding plaintiff $500 for pain and suffering caused by unjustified use of OC spray where plaintiff was decontaminated five minutes after exposure); *Thomas v. Byrd*, No. 4:08-cv-03840, 2009 U.S. Dist. LEXIS 110676, at *33, 2009 WL 4546666, at *12 (E.D. Ark. Oct. 30, 2009) (finding $500 to be a reasonable sum to fairly and justly compensate inmate for pain and suffering caused by use of pepper spray in the face and eyes, and the two days of burning, blurred vision, and twitching).

### B. Punitive Damages

It has long been recognized that "individual public officers [are] liable for punitive damages for their misconduct on the same basis as other individual defendants." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages may be awarded in an excessive use of force case either when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* The

appropriate focus "must be on whether the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory damages.'" *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003) (quoting *Smith*, 461 U.S. at 54).

O'Quinn's conduct involved, at minimum, "reckless indifference" to Gorham's Eighth Amendment right to be free from unwarranted administration of OC spray. Whether O'Quinn's utterly baseless use of OC spray would violate Gorham's rights did "not [require Officer O'Quinn to] guess in a gray area of the law." *Tedder*, 527 F. App'x at 274 (emphasizing that maliciously and sadistically spraying inmate with pepper spray "is always in violation of clearly established law") (citing *Shreve*, 535 F.3d at 240 (denying qualified immunity to a prison guard because right to be free from excessive use of pepper spray was clearly established)). Furthermore, the court determines that O'Quinn's conduct calls for deterrence and punishment above that provided by compensatory damages. *See Smith*, 461 U.S. at 55 (emphasizing that prison guards should be held accountable for conduct that "amount[s] to reckless or callous indifference to the rights and safety of the prisoners in [their] charge"). Thus, the court finds that punitive damages are warranted in this case.

"The amount of punitive damages to be awarded, if any, lies within the province of the trier of fact." *Givens v. O'Quinn*, 447 F.Supp.2d 593, 602 (W.D. Va. 2006) (citations omitted). However, due process prohibits the imposition of "a grossly excessive punishment on a tortfeasor." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (internal quotation marks omitted). Here, the court determines that O'Quinn shall be liable to Gorham for $1,500 in punitive damages. *See, e.g.*, *Cowart v. Erwin*, 837 F.3d 444, 455–56 (upholding jury award of $4,000 in punitive damages where former officer did not challenge quantum but the imposition of punitive damages and where the officer punched restrained and non-threatening inmate);

*Estate of Davis v. Delo*, 115 F.3d 1388, 1396–97 (8th Cir. 1997) (upholding punitive damages award of $5,000 against each defendant where trial court found evidence of malicious or evil intent in officer's beating of inmate while inmate offered no resistance).

## V. CONCLUSION

Based on the court's previous grant of Lt. Gilbert's motion for judgment as a matter of law, the court will enter judgment in favor of Lt. Gilbert and against Mr. Gorham as to the living conditions claim. And, for the reasons stated herein, the court will enter judgment in favor of Mr. Gorham and against Officer O'Quinn as to the excessive force claim. The court will award Mr. Gorham $500 in compensatory damages and $1,500 in punitive damages against Officer O'Quinn.

Entered: March 31, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge